UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KENNETH MICHAEL HORN,   Case No. 1:13-cv-610

       Plaintiff,   Barrett, J.
v.   Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Kenneth Michael Horn filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. The Commissioner filed a response, to which Plaintiff filed a reply. As explained below, the ALJ's finding should be REVERSED, because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on October 6, 2009, alleging disability beginning April 28, 2009 based upon a combination of mental and physical impairments. Plaintiff was born in 1958 and is considered an individual "approaching advanced age" under social security regulations. He completed high school and some college.

Plaintiff's DIB application was denied initially and on reconsideration, and he timely requested an evidentiary hearing. On March 14, 2012, Plaintiff, through his representative, appeared and testified at a hearing in Cincinnati, Ohio held before

Administrative Law Judge ("ALJ") Peter J. Boylan (Tr. 27-80). An impartial vocational expert also appeared and testified, as did Melissa Francis, a social worker with the Center for Respite Care Homeless Medical Recovery assigned to work with Plaintiff. On March 23, 2012, ALJ Boylan issued an unfavorable written decision. (Tr. 11-21).

The ALJ determined that Plaintiff has the following severe impairments: "coronary artery disease, residuals of three-vessel coronary artery bypass surgery, diabetes, obesity, a depressive disorder, an anxiety disorder, and residuals of substance abuse." (Tr. 12). However, the ALJ held that Plaintiff does not have an impairment or combination of impairments that would meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appx. 1. (Tr. 14). Instead, he found that Plaintiff retains the residual functional capacity ("RFC") to perform a range of light work, except as limited to:

> Frequent climbing of ramps and stairs, and occasional climbing of ladders, ropes, and scaffolds. He should avoid moderate exposure to hazards and concentrated exposure to temperature extremes, humidity, dust, fumes, odors, and the like. The work should be limited to simple, routine, and repetitive tasks. There should be no strict production standards. A certain amount of production is expected during a full day, but not an hourly basis or less. The job should require only simple work-related decisions. He could occasionally interact with coworkers and supervisors. He could less than occasionally interact with the public. The job should require few changes in a routine work setting.

(Tr. 14).

Plaintiff's longest tenure of employment has been as a truck driver. While the ALJ concluded that Plaintiff was not capable of performing his past relevant work as a truck driver, tax preparer, office manager, ground flight support, casino slot attendant, or street sweep operator, the ALJ determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy, including finish inspector,

2

assembler, and paper cutter. (Tr. 20). The Appeals Council denied Plaintiff's request for further review; therefore, the ALJ's decision remains as the final decision of the Commissioner.

The severe impairments found by the ALJ correspond with those claimed by Plaintiff in his application for disability benefits.[1] However, in his assertions of error, Plaintiff contends that the ALJ improperly weighed three medical opinions, that the ALJ failed to fully evaluate his morbid obesity, and that the ALJ did not adequately explain the basis for finding that Plaintiff had only "moderate" psychiatric limitations. The undersigned agrees that the ALJ committed error. While the issue of whether the errors were harmless is somewhat close, remand is recommended.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant

---

[1] In his original application, Plaintiff additionally claimed that he suffers from lumbar degenerative disc disease, but none of his assertions of error refer to that impairment.

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to

4

prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. §404.1512(a).

### B. Specific Errors

#### 1. Weighing Medical Opinion Evidence

Plaintiff first claims that the ALJ erred in evaluating the medical opinion evidence provided by an examining consulting physician, an occupational therapist, and by Plaintiff's own treating psychiatrist. Social security regulations generally require the most weight to be given to the opinions of treating physicians, with less weight to be given to the opinions of consultants. In addition, the opinions of examining consultants are generally entitled to greater weight than are the opinions of non-examining consultants. *See* 20 C.F.R.§1527(c)(1); *see also Gayheart v. Com'r*, 710 F.3d 365, 375-376 (6th Cir. 2013). However, these principles are subject to exceptions on a case-by-case basis, so long as the ALJ followed the regulatory scheme, offered a reasoned basis for his decision, and that decision is supported by substantial evidence.

The relevant regulation regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). The rationale for what has become known as "the treating physician rule" has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings

5

> alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)). The treating physician rule requires the ALJ to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009). If an ALJ does not give controlling weight to a treating physician's opinion, he must articulate the weight given to the opinion, and provide "good reasons" for that decision. *Id.* (additional citations omitted).

### a. Consultative Examiner Philip Swedberg and Mr. Bishop

Plaintiff first argues that the ALJ erred by stating that he was giving "little weight" to the opinion of consulting examining physician, Dr. Swedberg, and to the opinion of the Veterans' Administration's occupational therapist, James L. Bishop. While the treating physician rule does not apply to either individual, the ALJ still is required to consider all medical evidence, including that from consultants.

According to Plaintiff, both Dr. Swedberg and Mr. Bishop opined that Plaintiff would be limited to sedentary level work, which would have resulted in a presumption of disability under the Medical-Vocational Guidelines ("the Grids") based upon Plaintiff's age. However, contrary to Plaintiff's argument, Dr. Swedberg's opinions were actually consistent with a limited range of "light" work.

The "light" or "sedentary" exertional levels primarily refer to the amount of weight that the claimant can lift. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of up to 10 pounds. Dr. Swedberg found (as did Mr. Bishop) that Plaintiff could easily lift 20 pounds; in fact, Dr. Swedberg opined that

6

Plaintiff can occasionally lift up to 50 pounds. (Tr. 2167). Sedentary work involves a lower weight limit; lifting no more than 10 pounds at a time. It is true that an individual who can lift at the light exertional level may still be limited to the sedentary level if he has significant restrictions on standing and walking. In contrast to light work, sedentary work generally involves periods of standing or walking that total no more than about 2 hours of an 8-hour workday, and sitting approximately 6 hours of the 8-hour workday. *See* 20 C.F.R. 404.1567(b); SSR 83-10. However, Dr. Swedberg opined that Plaintiff could stand for 3 hours, walk for 1 hour, and sit for 4 hours, which would not preclude light work. (Tr. 2168). The ALJ expressly noted that his opinions were consistent with light work. (Tr. 18).

Dr. Swedberg's December 2011 examination confirmed that Plaintiff is morbidly obese, at 5' 9" and 337 pounds, with a slightly diminished range of motion of the lumbar spine but otherwise normal findings. (Tr. 2174-75). Plaintiff's cardiopulmonary exam was within normal limits, and he found normal gait, negative straight leg raise test, normal range of motion of the cervical spine and all extremities, and well-preserved muscle and grasp strength. (Tr. 2174-75). The ALJ stated that he was giving Dr. Swedberg's opinions "some, but less, weight [than the opinions of non-examining consultants]." Plaintiff argues that this was error, in part because the opinions of the non-examining consultants were based upon an earlier record, since they were dated February and June of 2010, as opposed to Dr. Swedberg's later opinions.

The Commissioner fails to respond to this argument, which the undersigned concludes cannot be dismissed as harmless error. Even though adoption of Dr. Swedberg's opinions would not necessarily result in the application of the Grid Rule that

7

Plaintiff seeks, given that his opinions did not technically restrict Plaintiff to sedentary work, the ALJ's analysis falls short under *Blakley*. In *Blakley,* the Sixth Circuit reiterated the principle that "[i]n appropriate circumstances, opinions from State agency medical...consultants...may be entitled to greater weight than the opinions of treating or examining sources." *Blakley*, 581 F.3d at 409, quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)). An important caveat under *Blakley* is that, when an ALJ chooses to credit the opinion of a non-examining consultant who has failed to review a complete record over that of a treating or examining physician, he must articulate his reasons for doing so. The facts of *Blakley* required remand because the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment...by Blakley's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consultants' opinions. *Blakley*, 581 F.3d at 409 (*quoting Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007)). In this case, the ALJ similarly failed to offer any indication that he had considered the timing of the non-examining consultants' opinions, and the fact that they were rendered on an incomplete record.

When an ALJ commits this type of *Blakley* error, his opinion still may be affirmed, but only if substantial evidence supports the opinion and any error is deemed to be harmless or *de minimis*. Here, the record reflects that Plaintiff's physical condition changed significantly, at least with regard to his obesity, from the time that the non-examining consultants reviewed the record in 2010 until December 2011 when he was examined by Dr. Swedberg. For that reason, the error is not harmless and remand is required.

Despite the necessity of remand under *Blakley*, the undersigned does not find the ALJ's analysis would otherwise constitute reversible error. The ALJ noted that Dr. Swedberg's opinions were "based upon a one-time examination rather than the evidence as a whole." (Tr. 18). The ALJ found Dr. Swedberg's more restrictive opinions, such as limits on working around heights and extreme temperatures, to be inconsistent with his clinical examination, which "only shows diminished lumbar range of motion, distant breath sounds, and trace pedal edema." (Tr. 18). Plaintiff suggests that Plaintiff's "easy fatigability and obesity…make him more prone to losing his balance," but Dr. Swedberg offered no similar explanation. In fact, Dr. Swedberg's report is inconsistent to the extent that he indicates a wealth of normal findings with "no….environmental limitations." (Tr. 2176).

Closely related to the asserted error regarding the ALJ's analysis of Dr. Swedberg's opinions, Plaintiff asserts error in the analysis of the opinions of occupational therapist, James L. Bishop.[2] Mr. Bishop opined that Plaintiff's functional deficits were mostly cognitive rather than physical in nature, stemming from depression. He limited Plaintiff to sitting 5-8 hours, standing 1-2 hours, and lifting up to 25 pounds. Unlike Dr. Swedberg's opinions, Mr. Bishop's more significant postural limitations would have limited Plaintiff to sedentary work. However, his evaluation explicitly states that "these recommendations are based upon a brief, one-time evaluation; they may or may not represent the [Plaintiff's] true level of function." (Tr. 2221-2222). The ALJ gave Mr. Bishop's assessment "less weight" for that reason, because the evaluation was not

---

[2] Defendant and the ALJ refer to Mr. Bishop as a physical therapist, but his credentials, "OTR/L," appear to be that of an occupational therapist. (Tr. 2222).

"performed by…an acceptable treating source," and because it was "not supported by objective medical findings on diagnostic testing or clinical examination." The ALJ disagreed with Mr. Bishop's assessment of the impact of Plaintiff's depression, noting that the extreme limitations were inconsistent with Plaintiff's reported activities of "taking online courses or going to the library or pursing [sic] interests such as gambling." (Tr. 18).

Only physicians and psychologists generally qualify as acceptable medical sources under social security regulations. There is no question that Mr. Bishop is not an "acceptable medical source." *See* 20 C.F.R. §404.1513. Pursuant to Social Security Ruling ("SSR") 06-03p, an ALJ must provide sufficient explanation of his or her review of the opinion of an acceptable medical source, but no similar requirement mandates the explicit analysis of "other" medical sources who do not qualify as "acceptable" medical sources. Here, the ALJ considered Mr. Bishop's assessment but found it to be inconsistent with other objective medical evidence. (Tr. 18). Aside from the previously referenced *Blakley* error, which might be considered harmless vis a vis Mr. Bishop's "other" source standing, the ALJ's analysis is supported by substantial evidence, including Mr. Bishop's own acknowledgement that his limited evaluation "may or may not represent…[Plaintiff's] true level of function," (Tr. 2222), and that Plaintiff had no complaints of pain.

### b. Treating Psychiatrist Alla Baskakova

Plaintiff also criticizes the ALJ's rejection of an opinion rendered in December 2011 by Plaintiff's treating psychiatrist, Alla Baskakova, M.D. Dr. Baskakova stated that he has treated Plaintiff monthly for depression since June 2009. (Tr. 2156). He opined

10

that Plaintiff's psychiatric condition resulted in multiple mental limitations, including opinions that Plaintiff would be unable to meet competitive standards in numerous areas, (Tr. 2158-59), and further opined that Plaintiff would miss more than four days per month from work. (Tr. 2161).

Although the opinions of a treating physician are ordinarily entitled to controlling weight, the regulation requires such deference only for opinions that are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and … not inconsistent with the other substantial evidence in your case record." 20 C.F.R.§1527(c)(2). Noting the numerous "extensive limitations" found by Dr. Baskakova, the ALJ appears to have rejected those opinions as "inconsistent with [his own] VAMC treatment records." (Tr. 19). By way of example, the ALJ noted Dr. Baskakova's opinion that Plaintiff was capable of managing his own finances despite numerous other extreme cognitive limitations that would appear to preclude that skill, and that despite "marked limitations in concentration, persistence, and pace, Dr. Baskakova's treatment records repeatedly note that he exhibits good attention and focus, and that his depressive symptoms are prominent but stable." (Tr. 19). *Compare Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006)(en banc)(holding that ALJ reasonably found that physician's records were inconsistent with his RFC assessment).

The ALJ also pointed out that the psychiatrist's opinions were inconsistent with other substantial evidence in the record. For example, Plaintiff "exhibits an ability to concentrate and focus sufficiently to take college classes online and earn a GPA of 3.8," Plaintiff reported going to the library and gambling online, and was reported to be a

11

"good participant in anger management classes." (Tr. 19). The ALJ pointed out that Dr. Baskakova often noted Plaintiff's good attention and focus and stable symptoms. (*Id.*). In addition, the ALJ noted that Plaintiff "performed in a talent show, singing along with others and doing a standup comedy routine." (Tr. 19).

While it is *implicitly* clear that the ALJ rejected virtually all of Dr. Baskakova's opinions, remand is required because he failed to *explicitly* state what weight he was giving to the psychiatrist's detailed opinions. "Even where the administrative law judge determines not to give the opinion of a treating physician controlling weight, Social Security regulations and the law of the Sixth Circuit nonetheless require the administrative law judge to determine and articulate on the record the amount of weight given to the opinion. *See* 20 C.F.R. § 404.1527(d); *Wilson v. Commissioner,* 378 F.3d 541 (6th Cir.2004)." *Lantz v. Astrue*, CIV.A. 2:08-CV-966, 2010 WL 545894 (S.D. Ohio Feb. 16, 2010). Here, the ALJ offered some explanation of why he did not credit Dr. Baskakova's most extreme functional mental limitations, but he committed legal error by failing to articulate on the record what weight he was giving to the various opinions. When an ALJ declines to give the opinion of a treating source controlling weight, he "must apply certain factors – namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining <u>what weight</u> to give the opinion." *Wilson*, 378 F.3d at 544 (discussing 20 C.F.R. §404.1527(d)(2))(emphasis added). A failure to satisfy this clear procedural requirement on the record violates the "good reasons" rule, and constitutes reversible error.

Plaintiff advocates for a different interpretation of the evidence in both his original Statement and in his reply memorandum, arguing that the ALJ erred by finding Dr. Baskakova's opinions to be internally inconsistent, and/or not well supported by substantial evidence in the record. Plaintiff urges this Court to conclude that the opinions were entitled to controlling weight. While it is anticipated that the ALJ will re-examine the psychiatrist's opinions in the course of completing the requisite analysis on remand, the record as presently developed does not necessarily require that controlling weight be given to Dr. Baskakova's opinions. *Accord Cole v. Astrue*, 661 F.3d 931, 938-939 (6th Cir. 2011)(reversible error where ALJ failed to conduct analysis of what weight to give to treating physician's RFC after declining to give it controlling weight; notwithstanding that "it may be true that [the treating source opinion] should not ultimately be accorded controlling weight.").

## 2. Consideration of Plaintiff's Obesity

Soon after Plaintiff's alleged onset of disability, in August 2009, he weighed around 260 pounds. (Tr. 1621-1629). However, he subsequently regained weight that he had lost, gaining 30 pounds by April 2010, and gaining substantially more weight over the next 20 months, weighing 337 pounds in December 2011. (Tr. 333). At only 5' 9" in height, Plaintiff is morbidly obese.

Social Security regulations do not permit a finding of disability based upon obesity, for obvious reasons. According to the Centers for Disease Control and Prevention, more than one-third of all adults in the United States (34.9%) are obese, the vast majority of whom are not disabled. *See* http://www.cdc.gov/obesity/data/adult.html (accessed on September 12, 2014). Nevertheless, "obesity may increase the severity

of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." SSR 02-1p. Therefore, SSR 02-1p requires consideration of a claimant's obesity in the assessment of whether a claimant meets or equals any particular listing at Step 3, as well as in the assessment of an individual's residual functional capacity.

Plaintiff argues that the ALJ inadequately considered the negative effect of his obesity on his cardiopulmonary impairment, diabetes, and depression. It is important to note that Plaintiff does not claim that if obesity had been considered, he would have met or equaled any particular listing at Step 3. Contrast *Diaz v. Com'r*, 577 F.3d 500 (3rd Cir. 2009)(remanding where the plaintiff claimed that she met or medically equaled a Listing based in part upon her morbid obesity). Instead, Plaintiff argues only that the ALJ's failure to fully consider his obesity improperly impacted the assessment of his credibility, and the ALJ's determination of his RFC at Steps 4 and 5. The undersigned agrees that the ALJ erred in failing to fully consider Plaintiff's obesity when assessing Plaintiff's RFC, and that this error also requires remand.

### a. Credibility

In contrast to the potential impact of Plaintiff's obesity on his RFC, the undersigned finds no specific error relating to obesity in the ALJ's credibility determination. The ALJ determined that Plaintiff was not fully credible based upon numerous inconsistencies in the record, the majority of which would appear to have little to do with obesity. For example, when asked why he stopped working as a truck driver, Plaintiff stated: "I refused to buy the new Department of Homeland mandated

identification badge," and conceded that he "[p]ossibly would still be working there if the employer did not require the badges." (Tr. 33).

In November 2009 Plaintiff denied shortness of breath and reported performing household chores and taking long walks of up to 60 minutes daily. In January 2010, he reported attending AA meetings and walking several miles a day, but he denied the same at the evidentiary hearing. In May 2010 his caseworker reported that he keeps his apartment relatively clean, consistent with Plaintiff's own prior reports on several occasions of performing household chores. However at the hearing Plaintiff denied performing chores and the same caseworker provided contrary testimony. Plaintiff reported taking online computer and college courses on multiple occasions from October 2010 to February 2012 and making good grades, but in February 2010 reported bad grades. In February 2012 he reported working on a house he helped his sister buy, and in December 2012 he reported going to the Hollywood Casino and gambling online. The ALJ explained that [t]he claimant's inconsistent statements and allegations regarding the degree of functional impairment and the range of his activities diminish the credibility of his claim…" The ALJ also pointed out that the record contained no evidence of complaints or treatment regarding hand numbness, significant swelling in the legs, leg cramps, or cognitive difficulties as alleged at the hearing.

The majority of these inconsistencies do not appear to bear any relationship to Plaintiff's obesity. Thus, were remand not required for other reasons, the undersigned would find that substantial evidence supports the credibility assessment. However, it is the practice and custom of the undersigned to require reconsideration of credibility when remand is required for other errors, in part because the other errors may have

influenced the credibility determination. For that reason, the ALJ should reconsider Plaintiff's credibility on remand.

### b. Plaintiff's RFC

Plaintiff further argues that his obesity should have resulted in a finding that he was limited to sedentary work. The ALJ acknowledged Plaintiff's ongoing issue with obesity, and made some findings that arguably account for obesity, such as limiting Plaintiff to frequent climbing of ramps and stairs, and only occasional climbing of ladders, ropes, and scaffolds. However, the ALJ determined that Plaintiff's capacity for light work was "consistent with the medical evidence of record, *including…obesity*" noting "no evidence of record that the claimant is unable to perform the amount of sitting, standing, and walking needed for light work." (Tr. 17, emphasis added). Aside from listing obesity as a "severe" impairment, the ALJ included no other discussion of Plaintiff's obesity in his opinion.

It is worth pointing out that Plaintiff concedes before this Court that "it is true that …[objective] test results, when considered independently from the remaining evidence, perhaps do not mandate a limitation to sedentary exertion." (Doc. 12 at 19, emphasis added). On the other hand, Plaintiff focuses in part on clinical records. Dr. Swedberg's and Mr. Bishop's assessments both contained postural limitations that – while not necessarily restricting Plaintiff to sedentary work -  may well have pertained to Plaintiff's level of obesity at that time. The ALJ included no postural limitations whatsoever, and remand is already required for reconsideration of the referenced opinions.

Historically the Sixth Circuit has required only minimal articulation at Step 3 of the sequential analysis, *see Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 412 (6th Cir.

16

2006)(stating that "[i]t is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants."). So long as the ALJ's decision as a whole articulates the basis for his conclusion, the decision may be affirmed. *See generally Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985); *see also Moody v. Com'r of Soc. Sec.,* 2011 WL 3840217 at *9 (E.D. Mich. July 15, 2011)(affirming where medical evidence reflected obesity, and ALJ found that Plaintiff could not engage in *any* climbing, crawling, bending, kneeling, stooping or crouching, could stand for no more than 10 minutes at a time, and required a sit/stand option, all of which addressed mobility problems associated with obesity). *Price v. Heckler*, 767 F.2d 281, 284 (6th Cir. 1985).

While the record is relatively close, the undersigned concludes that the ALJ's decision cannot be affirmed in this case, where Plaintiff's severe obesity appears to be so integral to his claim. To affirm in the face of such a lack of articulated analysis on the record would require this Court to assume a remedial "fill in the blank" role that is contrary to established Sixth Circuit precedent. *See Norman v. Astrue,* 694 F. Supp.2d 738, 741 (N.D. Ohio 2010)(where obesity is severe impairment, ALJ must do more than "mention the fact in passing."); *Motley v. Com'r of Soc. Sec.*, Case No. 1:08-cv-418-SAS, 2009 WL 959876 (S.D. Ohio April 8, 2009)(remanding based upon failure to discuss evidence in light of analytical framework of Listing, including effect of obesity); *but contrast, Cranfield v. Com'r of Soc. Sec.*, 79 Fed. Appx. 852, 857 (6th Cir. 2003)(affirming in case where the claimant failed to present evidence of any specific obesity-related limitations, such that "the ALJ was not required to give the issue any more attention than he did.").

### 3.  Articulation of "B" Criteria for Psychiatric Impairment

As a third claim of error, Plaintiff argues that the ALJ failed to adequately articulate the reasons that he assessed Plaintiff with "moderate" impairments of what is commonly referred to as the "B" Criteria, in the evaluation of Plaintiff's psychiatric impairment.  Plaintiff relies upon 20 C.F.R. §404.1520a(e), which requires an ALJ in his written decision to:

> incorporate the pertinent findings and conclusions based on the [use of a special] technique.  The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s).  The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

*Id.*  Plaintiff complains that the ALJ did not "properly document his application of the technique," because he did not adequately "explain" the basis for his findings that Plaintiff was "moderately" limited in the four functional areas, as opposed to either mildly or markedly limited.  (Doc. 12 at 21).  Plaintiff does not specifically dispute the ALJ's "moderate" findings; he does not argue, for example, that he is "markedly" limited in any of the four functional areas.[3]  To some extent, then, Plaintiff's argument elevates form over substance.

The undersigned would not recommend remand merely to require the ALJ to better articulate his reasons for finding Plaintiff to be "moderately" impaired.   The ALJ's analysis of the B criteria appears to be sufficient when his opinion is read as a whole.  He discussed both the opinions of the consulting examining psychologist, Dr. Griffiths,

---

[3]Notwithstanding the lack of any such specific argument, the Court acknowledges Dr. Baskakova's opinion that Plaintiff's limitations were "marked" in two areas.  (Tr. 2160).

18

the opinions of other state agency evaluators, and the opinion of Dr. Baskakova, as well as other evidence in the record relating to the B criteria. (Tr. 18). No authority required the ALJ to provide additional explicit written analysis. Nevertheless, because the ALJ's findings may be impacted by the reconsideration of Dr. Baskakova's opinions, it is recommended that the ALJ also re-examine the B criteria on remand.

### III. Conclusion and Recommendation

For the reasons discussed above, remand is required. A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted).

Accordingly, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g);

2. On remand, the ALJ should carefully reevaluate: a) the weight to be given to the medical opinions; b) the effect of Plaintiff's obesity; and, c) based upon the re-evaluation of medical evidence, findings for the B criteria relative to Plaintiff's psychiatric impairment;

3. As no further matters remain pending, this case be **CLOSED.**

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KENNETH MICHAEL HORN,                                      Case No. 1:13-cv-610

        Plaintiff,                                                              Barrett, J.
v.                                                                                    Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

20